# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| KEITH HOBBS and JEREMY JACKSON, individually and on behalf of others similarly situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ENTREVOICE VIRTUAL SOLUTIONS, INC., and JOSELYN CORNEJO<br><br>　　　　Defendants. | CIVIL ACTION FILE NO.<br><br><br>**COMPLAINT – CLASS ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

## Preliminary Statement

1. Plaintiffs Keith Hobbs ("Mr. Hobbs") and Jeremy Jackson ("Mr. Jackson") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. The Plaintiffs alleges that Entrevoice Virtual Solutions, Inc. ("Entrevoice"), and its CEO, Ms. Joselyn Cornejo, who participated in the automatic telephone dialing and authorized its use, made automated telemarketing

calls to the Plaintiffs and other putative class members without their prior express written consent.

3.     The Plaintiffs and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Entrevoice and Ms. Cornejo.

4.     A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.     Plaintiff Keith Hobbs currently resides in this District.

6.     Plaintiff Jeremy Jackson currently resides in Pennsylvania.

7.     Defendant Entrevoice Virtual Solutions, Inc. is a California corporation with its principal place of business at 333. W. Garvey Ave., Suite 844 in Monterey Park, CA 91754 and a registered address at 184 Casuda Canyon Dr., Suite E, Monterey Park, CA 91754.

8. Defendant Joselyn Cornejo is the Chief Executive Officer of Entrevoice and resides at 184 Casuda Canyon Dr., #E, Monterey Park, California 91754.

**Jurisdiction & Venue**

9. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member from a different state.

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11. The Court has personal jurisdiction over Entrevoice and the individually named defendants because they engaged in nationwide telemarketing conduct, including into this District.

12. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were commissioned into this District, as it was for the Plaintiff Hobbs.

## TCPA Background

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones</u>

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

18. The TCPA provides for individual liability when an agent or employee directly participated in, or personally authorized, the violative conduct.

19. This is consistent with the general tort principle that corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.

20.   Here, Ms. Cornejo both personally participated in the automated telemarketing conduct, as discussed below, and personally authorized the telemarketing conduct.

21.   When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

22.   By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

23.   Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years:

- "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." FCC Chairman Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016) (https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls).

- "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016) (https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf ).

- In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. For every month in the fiscal year, robocalls made

up the majority of consumer complaints about Do Not Call violations. *FTC Releases FY 2017 National Do Not Call Registry Data* (December 18, 2017) (https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc).

- In May of 2018 the New York Times reported extensively on the surging number of robocall complaints filed by consumers with the FTC and overall widespread consumer outrage as to the prevalence of illegal telemarketing despite existing law. *See Yes, It's Bad. Robocalls, and Their Scams, Are Surging.* Tara Siegel Bernard. https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

**Factual Allegations**

24. The Defendants provide merchant cash advances and payment processing services.

25. To generate new clients, the Defendants rely on telemarketing.

26. In fact, the Entrevoice has previously offered a Groupon (an internet-based coupon program) where it described itself as "special[izing] in…Outbound Telemarketing". *See* www.groupon.com/deals/entrevoice (Last Visited December 7, 2018).

27. When advertising for telecommunication specialists, Entrevoice advertised, "Entrevoice is a full customer service contact center (call center). We provide outsource solutions with an emphasis on growth. With our experience in customer service, telemarketing, virtual assistants and a respect for growing companies, we are the solution for all of your virtual needs. We are a fun new call

7

center opening doors in San Salvador, El Salvador soon! Our sales team is located in Los Angeles, CA." *See* http://us.jobomas.com/c/entrevoice_abroad_usa (Last Visited December 7, 2018).

28. One of the telemarketing strategies used by Defendants involves the use of automated calls to solicit potential customers.

Calls to The Plaintiffs

29. Plaintiff Hobbs is a "person" as defined by 47 U.S.C. § 153(39).

30. Mr. Hobbs's telephone number, (706) 761-XXXX, is registered to a cellular telephone service.

31. Mr. Hobbs's number is also on the National Do Not Call Registry.

32. Mr. Hobbs was called by Entrevoice on or around May 2, 2018.

33. When Mr. Hobbs answered the call, there was a distinctive click and a pause.

34. This click and pause is a telltale sign of a predictive dialer.

35. The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

36. As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

37. A predictive dialer is an ATDS as that term is defined by the TCPA.

38. Because of the predictive dialer, Mr. Hobbs said "hello" several times and then finally a live person came on the line.

39. Eventually, an individual identifying himself as "Robert" with the Entrevoice came on the line.

40. Mr. Hobbs terminated the call.

41. After Mr. Hobbs disconnected the call, Defendant Joselyn Cornejo made a follow up call and promoted the Entrevoice's goods or services.

42. Defendant Joselyn Cornejo then sent Mr. Hobbs a confirming e-mail on May 2, 2018 from joselyn@entrevoice.com.

43. Mr. Hobbs responded that he did not want Defendant Joselyn Cornejo to "call, text, or e-mail me anymore".

44. Mr. Hobbs then wrote to Entrevoice to determine if Entrevoice asserted that it had his prior express consent to make the call.

45. The Entrevoice responded, but without any assertion that Entrevoice had prior express consent to make the call.

46. Mr. Hobbs is not a customer of Entrevoice and has not consented to receive telemarketing calls prior to the receipt of these calls.

47. Mr. Jackson's telephone number, (814) 876-XXXX, is registered to a cellular telephone service.

48. Mr. Jackson's number is also on the National Do Not Call Registry and the Pennsylvania Do Not Call Registry.

49. Mr. Jackson was called by Entrevoice on at least May 3 and May 9, 2018.

50. When Mr. Jackson answered the May 9 call, there was a distinctive click and a pause.

51. This click and pause is a telltale sign of a predictive dialer.

52. The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

53. As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

54. A predictive dialer is an ATDS as that term is defined by the TCPA.

55. Because of the predictive dialer, Mr. Jackson said "hello" several times and then finally a live person came on the line.

56. Eventually, an individual who identified herself as "Karla Menjivar" came on the line and promoted the Entrevoice's goods or services.

57. Ms. Menjivar then sent Mr. Jackson a confirming e-mail on May 9, 2018 from karla@entrevoice.com informing Mr. Jackson that it was a "pleasure speaking with you."

58. Mr. Jackson is not a customer of the Entrevoice and has not consented to receive telemarketing calls prior to the receipt of these calls.

59. Unfortunately, the Plaintiffs' experiences with Entrevoice are not unique.

60. In fact, all the calls to the Plaintiffs came from 213-596-6272, which other individuals have complained about receiving unsolicited calls from. *See e.g.* https://www.reportedcalls.com/2135966272 (Last visited December 7, 2018).

61. The Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiffs and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiffs and the class.

## Class Action Allegations

62. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

63. The Class of persons Plaintiffs propose to represent is tentatively defined as:

> All persons within the United States to whom: (a) Entrevoice and/or a third party acting on their behalf, made one or more non-emergency

11

telephone calls; (b) that could have promoted Entrevoice's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

64. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

65. The Class as defined above is identifiable through phone records and phone number databases.

66. The potential Class members number at least in the thousands. Individual joinder of these persons is impracticable.

67. The Plaintiffs are members of the Class.

68. There are questions of law and fact common to Plaintiffs and to the proposed Class, including but not limited to the following:

    a. Whether Defendants violated the TCPA by using automated calls to contact putative class members cellular telephones;

    b. Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

    c. Whether the Plaintiffs and the class members are entitled to statutory damages because of Defendants' actions.

69. The Plaintiffs' claims are typical of the claims of class members.

70. The Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

71. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

72. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

73. The Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Violation of the TCPA's Automated Call provisions

74. The Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

75. The Defendants violated the TCPA by (a) initiating automated telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(b).

76. The Defendants' violations were willful and/or knowing.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiffs request the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an automatic telephone dialing system;

C. Because of Defendants' violations of the TCPA, Plaintiffs seek for themselves and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

E. Such other relief as the Court deems just and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

Dated: December 19, 2018        PLAINTIFFS, individually and
                                on behalf of others similarly situated,

                                By:

                                **THE KOVAL FIRM, LLC**

                                */s/ Steven H. Koval*
                                Steven H. Koval
                                Georgia Bar No. 428905
                                3575 Piedmont Road
                                Building 15, Suite 120
                                Atlanta, GA  30305

                                Telephone:  (404) 513-6651
                                Facsimile: (404) 549-4654
                                shkoval@aol.com